IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


BRUCE ERIC BYRD,

        Petitioner,

v.                                     CIVIL ACTION NO. 1:13-cv-02775
                                        (Criminal No. 1:11-cr-00657)

UNITED STATES OF AMERICA,

        Respondent.


**MEMORANDUM OPINION AND ORDER**

Now before the court is Petitioner Bruce Eric Byrd's Motion to Vacate Sentence [Docket 165]. For the reasons set forth below, the motion is **DENIED**.

    **I.    Background**

On December 6, 2011, a federal grand jury indicted the petitioner, Bruce Eric Byrd, for violation of several federal statutes with regard to the murder of federal witness Isaiah Callaway. (*See* Indictment [Docket 4]). On February 23, 2012, the grand jury returned a superseding indictment. (*See* Superseding Indictment [Docket 16]). In the superseding indictment, Byrd was charged with: conspiracy to use interstate communication facilities in the commission of murder-for-hire under 18 U.S.C. §§ 1958(a), (j); conspiracy to murder a witness, resulting in death, under 18 U.S.C. §§ 1512(a)(1)(C), (3)(A), (k); use and discharge of a firearm during and in relation to crimes of violence, causing death by murder, under 18 U.S.C. § 924(c); conspiracy to commit bank fraud and attempted bank fraud under 18 U.S.C. § 1349; and aiding and abetting under 18 U.S.C. § 2. (*See generally id.*).

The petitioner and the government came to an agreement whereby the petitioner agreed to plead guilty to Count Five of the superseding indictment. (*See generally* Plea Agreement [Docket 57]). The Plea Agreement states:

> 1. The Defendant agrees to plead guilty to Count Five of the Superseding Indictment now pending against him in which he is charged with use and discharge of a firearm in relation to crimes of violence that may be prosecuted in a court of the United States, namely:
>
>     a. Violation of 18 U.S.C. § 1958, to wit: conspiracy to use and cause another to use a facility in interstate commerce with intent that a murder be committed in violation of the laws of the State of Maryland and the United States, which resulted in the death of Isaiah Cortez Callaway, as charged in Count One of the Superseding Indictment; and
>
>     b. Violation of 18 U.S.C. § 1512(a)(1)(C), to wit: conspiracy to kill a person with intent to prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense, as set forth in Count Three of the Superseding Indictment, resulting in the death of Isaiah Cortez Callaway, [] in violation of Title 18 U.S.C. § 924(c).
>
> The Defendant admits that he is, in fact, guilty of the offense of using and discharging a firearm in relation to crimes of violence, resulting in the death of Isaiah Callaway, as set forth in Count Five, and he will so advise the Court.

(*Id.* at 1-2). With regard to sentencing, the Plea Agreement provides:

> 8. (a) The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **forty years (40 years)** imprisonment without parole constitutes an appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine or term of supervised release or to set any lawful conditions of probation or supervised release.
>
>    (b) In the event that the Court *rejects* the forty year sentences agreed to by the parties, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his guilty plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

(*Id.* at 7) (emphasis in original). The Plea Agreement was signed by the petitioner on July 17, 2012. (*See id.* at 9). Judgment was entered against the petitioner on October 15, 2012. (*See* Judgment [Docket 108]). The petitioner was sentenced to forty years imprisonment. (*See* Sentencing Tr. [Docket 96], at 9).

On September 19, 2013, the petitioner filed the instant motion to vacate his sentence, pursuant to 28 U.S.C. § 2255. (*See* Mot. to Vacate ("Petition") [Docket 165]). The petitioner alleges that his counsel was ineffective for informing the petitioner that he faced a sentence of 20-25 years for his guilty plea, that the district court exceeded its authority when it sentenced the petitioner to forty years imprisonment, and that the United States did not state a federal claim against him because his crimes did not affect interstate commerce. (*See id.* at 5). In his reply, the petitioner also alleges that his counsel was ineffective for failing to object to Count Five of the superseding indictment as defective. (*See* Def.'s Reply and Supp. Claims ("Reply") [Docket 180]), at 13-17).

## II. Standard of Review

Section 2255 of Title 28 of the United States Code provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). It provides that the court shall hold an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" *Id.* § 2255(b). "Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to

establish [success on the merits] by a preponderance of evidence." *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

In order to prevail on his claim of ineffective assistance of counsel, the petitioner must demonstrate (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The petitioner bears the burden of establishing both deficient performance and prejudice. *See id.* at 688-695.

### III. Discussion

The materials supplied by the parties thoroughly demonstrate that the petitioner is unable to succeed on his claims. Therefore, I **FIND** that an evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2255(b).

#### A. Ineffective Assistance of Counsel

The petitioner argues that his counsel was ineffective because counsel informed the defendant that his sentence would not exceed 20-25 years imprisonment. The petitioner alleges that but for counsel's deficient advice, he would have gone to trial. However, both the Plea Agreement and the record contain multiple references to the forty year sentence agreed to by the parties. As set forth above, the Plea Agreement provides that "[t]he parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **forty years (40 years)** imprisonment without parole constitutes an appropriate disposition of this case." (Plea Agreement [Docket 57], at 7) (emphasis in original). Additionally, during the Rule 11 colloquy, the court stated, "[T]he parties in this case, as the law allows, have reached an agreement as to sentence . . . . to a sentence of imprisonment of 40 years." (Rearraignment Tr. [Docket 54], at

...

establish [success on the merits] by a preponderance of evidence." *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

In order to prevail on his claim of ineffective assistance of counsel, the petitioner must demonstrate (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The petitioner bears the burden of establishing both deficient performance and prejudice. *See id.* at 688-695.

### III. Discussion

The materials supplied by the parties thoroughly demonstrate that the petitioner is unable to succeed on his claims. Therefore, I **FIND** that an evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2255(b).

#### A. Ineffective Assistance of Counsel

The petitioner argues that his counsel was ineffective because counsel informed the defendant that his sentence would not exceed 20-25 years imprisonment. The petitioner alleges that but for counsel's deficient advice, he would have gone to trial. However, both the Plea Agreement and the record contain multiple references to the forty year sentence agreed to by the parties. As set forth above, the Plea Agreement provides that "[t]he parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **forty years (40 years)** imprisonment without parole constitutes an appropriate disposition of this case." (Plea Agreement [Docket 57], at 7) (emphasis in original). Additionally, during the Rule 11 colloquy, the court stated, "[T]he parties in this case, as the law allows, have reached an agreement as to sentence . . . . to a sentence of imprisonment of 40 years." (Rearraignment Tr. [Docket 54], at

20:11-15). The court further stated, "[T]his agreement does not affect the Court's discretion, if it accepts that 40-year sentence, to impose any other lawful terms of sentence, such as a fine or supervised release or any other conditions of probation and supervised release that might pertain." (*Id.* at 20:20-24). The court also stated, "[I]f this plea agreement is accepted and if the Court accepts the plea, the government will make no other argument except that the Court impose the 40-year sentence" and "if the Court were to give a sentence of anything other than 40 years, Mr. Byrd will be able to appeal that sentence, as would the government." (*Id.* at 21:10-12, 23:25). The court informed the petitioner, "[Y]ou'd have a right, in a normal case, to appeal . . . any sentence that was imposed. But in this case, you're agreeing to a 40-year sentence. And if that's the sentence, then there's no appeal because you've agreed to it. Do you understand that?" (*Id.* at 22:13-17). The petitioner responded in the affirmative. (*See id.* at 22:18). The petitioner did not indicate at the rearraignment that his counsel had informed him that his sentence would not exceed twenty-five years. (*See generally id.*). The court asked the petitioner, "[D]id you think that anybody has made any promise or agreement with you except what's in the agreement?" and the petitioner responded, "No." (*Id.* at 22:22-25).

The record of the petitioner's sentencing hearing also demonstrates the petitioner's knowledge that he had agreed to a forty-year sentence. At the sentencing hearing, the court addressed a letter that the petitioner had written to the court. In the letter, the petitioner expressed that he was concerned that Tavon Dameon Davis, one of his co-defendants, had agreed to a plea agreement with the government that called for a lesser sentence than the petitioner's. (*See* Sentencing Tr. [Docket 177-3], at 3-6). The petitioner's counsel addressed the letter and stated:

> I sat down with [Mr. Byrd] to review again the plea agreement, what it means to proceed with a [§924](c) plea, and that there is, in fact, no flexibility on the number in the manner in which he suggested. So we did have the opportunity to discuss

> that. He understands that and what the sentence will be today, assuming the Court accepts the recommendations of the government and counsel for Mr. Byrd . . . .
>
> Mr. Byrd is relatively young. I think that it was very difficult for him, when faced with the opportunity to accept a plea of 40 years, to get his mind around what that amount of time really means for someone who has not yet lived 30 years, to voluntarily give up their right to trial, which may contain at least some theoretical hope for acquittal, is a difficult thing to do. And that was a time consuming and exacting process where we worked with Mr. Byrd to counsel him to fully appreciate his likelihood of success or lack thereof at trial, and also to think about what his life will be like over the ensuing decades, and the difference between going into prison as someone who knows that some day they'll be able to walk out versus someone who walks in knowing that that is never a possibility.

(Sentencing Tr. [Docket 177-3], at 4:5-13, 6:9-21). At the sentencing hearing, the prosecution stated, "I can tell you and the Court and Mr. Byrd on the record that in the event that there were[] some sentence lower than 40 years imposed, the government would exercise its option to withdraw . . . from the plea agreement, and that would put [Mr. Byrd] in a position, of course, that would be substantially more serious than when [sic] he's even facing now." (*Id.* at 4:18-23).

The court gave the petitioner the opportunity to speak on the record before he was sentenced. The petitioner spoke before he was sentenced, but at no point did the petitioner object to the forty-year sentence or state that he had been told by counsel that he would not receive more than twenty-five years imprisonment. (*See id.* at 8:15-20).

There is nothing in the record to support Mr. Byrd's claim that he was informed by counsel that he would not receive more than twenty-five years imprisonment. Indeed, the record is replete with references to the forty-year sentence agreed to by the parties. The petitioner signed the Plea Agreement, which clearly stated that he was agreeing to a recommended sentence of forty years imprisonment. Additionally, the petitioner had many opportunities at the rearraignment and the sentencing hearings to object when the court discussed the forty-year sentence, but he did not. In order to establish prejudice, the petitioner must demonstrate that had he been properly informed of

6

the forty-year sentence by his attorney, he would have proceeded to trial. *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995). The petitioner cannot establish prejudice. Even if the petitioner's counsel improperly informed him that he would not receive a sentence of more than twenty-five years, that error "was corrected by the trial court at the Rule 11 hearing, and thus [the petitioner] was not prejudiced." *Id.* at 88. In *United States v. Foster*, the petitioner argued that if his counsel had properly informed him that he could be sentenced as a career offender, he would not have pleaded guilty. *See id.* at 87-88. The Fourth Circuit found that there could be no prejudice because the trial court properly informed the defendant of his potential sentence at the Rule 11 hearing. *See id.* at 88. The court found that "even if Foster's trial counsel provided Foster incorrect information about sentencing, Foster was in no way prejudiced by such information given the trial court's careful explanation of the potential severity of the sentence." *Id.*

The same is true in this case. Even if the petitioner's counsel improperly informed him of the agreed-upon sentence, which there is no evidence in the record to support, the court nonetheless corrected such an alleged error by repeatedly informing the petitioner that the Plea Agreement contained an agreed sentence of forty years. I therefore **FIND** that the petitioner cannot establish prejudice in his ineffective assistance of counsel claim regarding the forty-year sentence.

### B. Facts Triggering Minimum Mandatory Sentence

The petitioner also argues that the district court erred by imposing a sentence beyond the mandatory minimum of sixty months "without [Byrd] admitting to the element or a jury finding him guilty of the element beyond a reasonable doubt." (Petition [Docket 165], at 5). First, the government properly notes that pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), the minimum mandatory sentence for Mr. Byrd was ten years, not sixty months, because the petitioner admitted in the Plea Agreement and at the Rule 11 colloquy that the firearm he used to murder Mr. Callaway was

discharged in furtherance of a crime of violence. *See* 18 U.S.C. § 924(c)(1)(A)(iii) ("Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.").

Although the petitioner's exact argument is unclear, it appears the petitioner is arguing that he did not stipulate to the facts necessary to support a conviction of more than the minimum sentence allowed under 18 U.S.C. § 924(c). However, the superseding indictment alleged, and the petitioner stipulated, that the petitioner discharged a firearm during a crime of violence. Therefore, the maximum sentence the petitioner could have received was life imprisonment. *See, e.g.*, *United States v. Johnson*, 507 F.3d 793, 798 (2d Cir. 2007) (finding that "the maximum sentence under [18 U.S.C. § 924(c)(1)(A)] is life imprisonment" and collecting cases regarding same). The parties agreed to, and the court imposed, a sentence of forty years, less than the maximum possible penalty of life imprisonment. Additionally, unlike other statutes, 18 U.S.C. § 924(c) does not require that specific facts be proven in order for a higher sentence to apply. *See* 18 U.S.C. § 924; *cf.* 21 U.S.C. § 841 (setting forth specific quantities of drugs to provide for higher statutory maximum sentences). I therefore **FIND** that the court did not err in imposing the agreed-upon sentence of forty years.

### C. Federal Nexus

The petitioner asserts that the court lacked jurisdiction over the indictment because the petitioner's "alleged criminal conduct [occurred] within the state of Maryland and did not [affect

8

interstate] commerce." (Petition [Docket 165], at 5). The superseding indictment alleged that the defendant committed four crimes of violence in violation of 18 U.S.C. § 1958 and 18 U.S.C. § 1512(a)(1)(C), including murder for hire. As the Fourth Circuit has noted, "all of the circuits to address the question" of whether Congress was within its power to enact the murder-for-hire statute under the Commerce Clause have found that "Congress's enactment of the murder-for-hire statute . . . did not exceed its authority under the Commerce Clause." *United States v. Runyon*, 707 F.3d 475, 489 (4th Cir. 2013). Additionally, in the stipulation of facts contained in the Plea Agreement, the petitioner stipulated that he used cellular phones to prepare to commit the murder. (*See* Stipulated Factual Statement to Supp. Guilty Plea to Count Five of the Superseding Indictment [Docket 57-1], at 4-6). "[I]t is well established that cellular phones are instrumentalities of interstate commerce." *Salsbery v. Verizon Wireless (VAW), LLC*, No. 2:13-CV-26419, 2014 WL 3876635, at *4 (S.D. W. Va. Aug. 7, 2014) (citing *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997)). I therefore **FIND** that the court properly exercised jurisdiction over the superseding indictment.

### D. Allegedly Deficient Indictment

In his reply, the petitioner argues that Count Five of the superseding indictment was deficient because it "charges multiple underly[ing] predicate offenses in a single count," and that his counsel was ineffective for failing to object to that error. (*See* Reply [Docket 180], at 14). The petitioner relies upon *United States v. Castano*, 543 F.3d 826 (6th Cir. 2008) to support his argument. In *Castano*, the defendant argued that there were errors in the jury instructions and verdict form during his trial. *See* 543 F.3d at 832. The defendant was convicted of "possession of a firearm during a drug trafficking crime" in violation of 18 U.S.C. § 924(c). *Id.* at 834. However, the Sixth Circuit had recognized 18 U.S.C. § 924(c) as criminalizing two distinct offenses: "a use

or carriage offense which has during and in relation to as its standard of participation," and "a possession offense, which has in furtherance of' as its standard of participation." *Id.* at 832 (internal quotation marks omitted). The jury instructions, however, referred to "the crime of *possession* of a firearm *during* a drug trafficking crime." (*Id.* at 834) (emphasis added by court). The court found that the jury instructions "impermissibly authorized a conviction of a non-existent offense, which in this case was that of possessing a firearm simply during a drug trafficking offense." *Id.* at 836.

In the instant case, the superseding indictment, unlike the jury instructions in *Castano*, alleged that the petitioner "did knowingly use, carry and discharge a firearm during and in relation to crimes of violence[.]" (Superseding Indictment [Docket 16], at 11). The Plea Agreement further stated that "the defendant knowingly used and discharged a firearm during and in relation to" crimes of violence, in violation of 18 U.S.C. § 924(c). (Plea Agreement [Docket 57], at 2). The Supreme Court has determined that "§ 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Watson v. United States*, 552 U.S. 74, 76-77 (2007). Here, the superseding indictment alleged, and the petitioner pleaded guilty to, *discharging* a firearm during and in relation to a crime of violence. Discharge of a firearm is certainly enough to demonstrate "active employment of the firearm by the defendant." *Id.* I therefore **FIND** that the indictment was not defective, and therefore the petitioner cannot demonstrate ineffective assistance of counsel due to the allegedly defective indictment.

### E.  Certificate of Appealability

The court additionally has considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the

denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). For the reasons explained above, the court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

### IV. Conclusion

For the reasons set forth above, Petitioner Bruce Eric Byrd's Motion to Vacate Sentence [Docket 165] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 20, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE